Wayne Spindler

P.O. Box 16501

Encino, CA. 91416-6501

(213) 381-1403—phone  (213) 381-5542-fax

*In propia persona*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| Wayne Spindler,<br><br>          Plaintiff,<br><br>vs.<br><br>City of Los Angeles; Matthew M. Johnson; Mitchell Englander; Marqueece Harris-Dawson; Charlie Beck; Steve Soboroff; and Does 1 to 10,<br><br>          Defendants. | Case No.: **2:16-CV-05655-JLS-E**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**FIRST AMENDEDCOMPLAINT FOR DAMAGES FOR FIRST, FOURTH, FIFTH,EIGHTH AND FOURTEENTH AMENDMENT TO US CONSTITUTION; CALIFORNIA CONSTITUTION PURSUANT TO 42 U.S.C. § 1983; UNCONSTITUTIONAL RULES; DUE PROCESS VIOLATIONS; AND STATE LAW CLAIMS.**<br><br>**Due Date: September 5, 2017** |

# I.   **JURISDICTION AND VENUE**

1. As this case involves questions which arise under the U.S. Constitution and the laws of the United States, the jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331. The Court has jurisdiction to issue relief pursuant to the Declaratory Relief Act, 28 U.S.C. § 2201 and 2202. This court has jurisdiction to hear Plaintiffs' pendent state claim through the doctrine of supplemental jurisdiction set forth at 28 U.S.C. § 1367.

2.   Venue is proper for the United States District Court for the Central District of California under 28 U.S.C. § 1391 (b). Defendants reside in the Central District, and the acts and omissions complained of herein have occurred and will occur in the Central District.

3.   The Court issued a dismissal of the case originally filed July 2016 with leave to file an amended complaint. The tenor of the Court's order of August 4, 2017 is that the Plaintiff did not clearly state a cause of action. The facts were simply stated enough, that is the Defendant City and its associates retaliate, shut down, arrest, menace, harass, and victimize people who go publicly against their will. It also was shown that past judges in this very District have dealt with the City of Los Angeles and prior named Councilmembers and Commissioners who retaliate and interpret and apply rules of decorum and criminal statutes to suppress public

speakers exactly like Plaintiff. The City has a long history and a continued pattern

and practice of such suppression, retaliation, and abuse of people like Plaintiff who

stand up to them and oppose their agenda of raising taxes, fees, and costs while

using the L.A.P.D. to abuse, track, and menace anyone who gets in the way of

"City Business." It is clear cut that the Plaintiff here is the victim of organized

terror at the hands of the Los Angeles City Council, L.A.P.D., and its employees.

Plaintiff will again, restate, the facts of these claims and demands his day in

court vs. these Defendants. Plaintiff has been labled a "gadfly" by the Defendants.[1]

Since November 10, 2015 to this date, the Defendants have illegally had the

Plaintiff arrested each year, face criminal arraignments 3 times, and trial

once. In total, and at a cost of hundreds of thousands of dollars of time and effort

paid by the City, the Plaintiff has been convicted of one infraction count of

"disturbing the peace" in 2017. On March 30, 2017 the Defendants on a hoax 911

call surrounded the Plaintiff with 20 police, Sheriff, and C.H.P. officers and nearly

shot the Plaintiff. The retaliation further escalates as of the date of this Amended

Complaint.

///

---

[1] Merriam-Webster's definition of gadfly reads in part: "a person who stimulates or annoys other people especially by persistent criticism [a political gadfly]"

## II.   PARTIES TO THE ACTION

4. The City of Los Angeles is a municipal corporation and a "chartered City" that is responsible for the supervision and employment of its employees, including commission appointees. The City is the legal and political entity responsible for the actions of its officers and employees. The City is not entitled to qualified immunity because the actions taken against Plaintiff violate clearly established rights under the Law.

5.  Defendant Matthew M. Johnson is the President of the L.A.P.D. Commission, and is an employee of the City of Los Angeles in his duties. He was was appointed and confirmed to a term in office by the Mayor and City Council. Johnson is being sued as an individual and in his official capacity. At all times, Johnson was acting under color of law. He is not entitled to qualified immunity as he knew that the Plaintiff had a clearly established right to attend a meeting he chaired on November 10, 2015.

6. Defendant Steve Soboroff is the vice-president of the L.A.P.D. Commission. He like Defendant Johnson, was appointed by the Mayor and confirmed to a term by the City Council, and is a city employee in his duties as such. He like Johson is being sued individually and in his official capacity. At all times, Soboroff was acting under color of law. He is not entitled to qualified immunity as he knew the

law clearly establishes a right for the Plaintiff to attend the meetings of the L.A.P.D. Commission and violated that right by direction on November 10, 2015. Soboroff also knows that a speaker cannot be harassed or singled out for his speech at such Commission meetings, On November 17, 2015 that was done willingly by Soboroff. A public member who speaks cannot be retaliated against for his opinions of Police Business he expresses at public meetings. On December 8, 2015 Soboroff threatened and menaced Plaintiff in direct response to his expression of his views on Police business and comments he made regarding Soboroff.

7. Defendant Charlie Beck is the L.A.P.D. chief of police, and executive officer of the L.A.P.D. responsible for all operations of the L.A.P.D. except when the L.A.P.D. Commission in in session. Beck is also an employee of the City of Los Angeles. Beck is being sued individually and in his official capacity. Beck was acting under color of law. Beck cannot have qualified immunity as he violates or directs or ignores clearly established laws protecting participation of the public at public meetings.

8. Defendant Mitchell Englander is an elected City Councilmember from the 12th District and a City employee as well. Defendant Englander was acting under color of law, and is being sued individually and in his official capacity. Englander also is a "police officer" and is being sued in this capacity as well. Englander is

not entitled to qualified immunity because he knows as a City Councilman the Rules and Brown Act as well as training as a reserve police officer that the law clearly established the right of the Plaintiff to participate and attend the public meetings **without interruption of his time and harassment.**

9. Defendant Marqueece Harris-Dawson is an elected City Councilmember from The 8th District and a City Employee. Defendant Harris-Dawson is being sued individually and in his official capacity. At all times the Defendant was acting under color of law. This defendant is not entitled to qualified immunity because he knew the speaker submitted a card and willfully refused the clear right to call the card and allow the Plaintiff to speak at a meeting he chaired on January 13, 2016. As well, at a meeting on March 1, 2016 Harris-Dawson allowed and failed to stop numerous harassment and interruptions of Plaintiff while he was on his time to speak during the PLUM meeting.

10. The Plaintiff is a private non-public person who speaks and publicly participates in City of Los Angeles meetings at City Hall, and the Los Angeles Police Commission, Committee meetings, Commission meetings and other meetings including neighbor council meetings. Plaintiff has attended over 100 meetings and is considered a "gadfly."

## III. INTRODUCTION

11.    As alleged herein, the City has adopted and enforced a written policy and

has actual and/or constructive knowledge that in the conduct of its public meetings, including meetings of the L.A.P.D. Commission and Committee meetings, there is an unwritten policy and/or pervasive practice that is so permanent and well-settled as to constitute a custom and usage with the force of law, to selectively censor the speech of certain persons, including Plaintiff, who express views that are critical of the City and/or its officials, through the unconstitutional use and enforcement of "Rules of the City Council" part hereof by this reference ("the Rules") and related policies and practices, including the Rules of the L.A.P.D. (L.A.P.D. Rules)  as well as false imprisonment and false arrests; criminal prosecutions, obtaining restraining orders directed by the Threat Management Unit or "T.M.U," fabricating reports including perjured statements under oath, press conferences to further the lies, use of high powered lobbyist contacts such as from firms as "Englander, Knabe, and Allen" including removing such persons from public meetings and otherwise interfering with their right to speak and/or their right to assemble at such public meetings, and by tolerating and/or acquiescing in such policies and practices and in the suppression of such Constitutional and statutory rights and by failing, after being on notice thereof, to train, supervise, monitor and correct City officials who preside over such public meetings and members of General Services Police Officers, within the Office of Public Safety, Department of General Services ("Police Officers"). Plaintiff alleges that the wrongful acts and omissions alleged

herein violate his Right to Free Speech, his Right of Assembly and his Right to

Due Process of Law, contrary to the First, Fourth, Fifth, Eighth and Fourteenth

Amendments to the U.S. Constitution and Article 1, Section 2 of the California

Constitution, as impermissible prior restraints on protected expression in a public

forum, under laws and rules that, on their face and as applied, are impermissibly

vague and lack adequate guidelines, thereby allowing authorities unbridled

discretion to abridge Constitutional rights, including Plaintiff's Constitutional

rights.

 12.Prior to the filing of this action, Plaintiff, attempted to resolve this matter,

thereby saving time, effort and expense, without burdening the court, but the City

has failed to respond. In compliance with the California Tort Claim Act, on or

about various dates less than ninety 90 days after the events in question

and prior to the filing of this action from 2016 and this year, Plaintiff, presented his

claims to the City in a letter, a true and correct copy of which are attached hereto

as Exhibits and are made a part hereof by this reference, which claims were

addressed to the proper party, gave the City adequate notice that litigation would

ensue if the matter was not resolved, gave the City sufficient time to investigate the

matter and provided an address where Plaintiff could be contacted. Said claims

have been deemed or are deemed to have been rejected by the City.

13.   Defendant City is a municipal entity, organized under the laws of the State of California with the capacity to sue and be sued. The City is the legal and political entity responsible for the actions of its officers and employees.

14. At all times herein the City was acting under color of law.

15. At all times herein the City employees were acting under color of law.

16. Defendants, at all times material hereto, were acting as Officers of the a Committee, or as Executive Officers of a Committee, or Legal Counsel to such or police officers thereto and each person is being sued as an individual and in his official capacity. At all times, Defendants were acting under color of law. Plaintiff is informed and believes each Defendant resides in the County of Los Angeles, except Defendant Beck who is believed to live in San Bernardino County..

## IV. FACTUAL ALLEGATIONS

17. The Law in California for public meetings and access to them is called The Ralph M. Brown Act. This law has been trampled on by the Defendant and its agents, employees, and other volunteers. The Public is limited to 1 minute of

public comment or and when they speak they are cut off in mid sentence, are

tossed out of meetings for false claims of "disruption" or their speaker cards are

"misplaced" or "lost" over "overlooked" many times.

18. According to the Rules of the Los Angeles City Council, all "meetings of the

Board shall be in a municipal or other facility open to the public and with

reasonable provision for attendance by the public;" that at any public hearing,

"members of the public are invited to express their views on a particular subject"

and that "members of the general public may address the Board orally at any

meeting with regard to any matter on which the Board is deliberating at such

meeting..."

19. There have been in this suit several claims of such violations and all these

claims have been DENIED by the City Attorney of Los Angeles. (exhibit A).

20. As well, claims to the L.A.P.D (The Los Angeles Police Department have

been lodged by Plaintiff and denied by the City (Exhibit.)

## V. EVENTS OF NOVEMBER 10, 2015

21. The regular scheduled L.A.P.D. Police Commission meeting was being

heard. Plaintiff was excluded from the meeting itself: The Agenda was posted

(Exhibit D). There had been, prior to Plaintiff showing up, a closure of the meeting

by the President Matthew M. Johnson without a vote of the members of the Board.

Plaintiff was targeted in violation of rights under the First Amendment and Due

Process clause of the U.S. Constitutionas well as his free speech and free assembly

rights under the First Amendment of the U.S. Constitution and Article I, §2 of the

California Constitution when he was prevented from addressing the City of Los

Angeles Los Angeles Police Commission, Board of L.A.P.D. Commissioners

Defendants Soboroff and Johnson and Defendant Beck , the chief executive or

"chief" of the L.A.P.D. The November 10, 2015 meeting was required to be held

under the Ralph M. Brown Act, the City of L.A. Rules of Decorum, the City Rules,

and the L.A.P.D. Rules (Exhibit E.) Plaintiff was by these laws and regulations

entitled by law to address this board at that meeting. Plaintiff had viewed the

agenda (Exhibit D.)

   21A. Plaintiff had filled out three Speaker cards (Exhibit K to the original

Complaint) while in the Lobby of the L.A.P.D. Headquarters where he was

required to await the end of the Recess of the meeting. Plaintiff had checked in. On

his three speaker cards, Plaintiff to protect his identity and by right of law, used a

pseudonym "Wayne Houseman" and requested to speak on item 4, 5, and 6A

of that morning's agenda (Exhibit D.) The Sargeant-at-Arms, the City Attorney,

and the executive director, Mr. Teefang were in the hallway adjacent to the

meeting room in back of the lobby area. There is a security gate that they stood

behind. None of these people would take my speaker cards.

   21B. The meeting agenda states (exhibit D) that members of the public are

[Spindler v. City of Los Angeles I First Amended Complaint] - 11

Invited to address the Board of Police Commissioners on any item on the agenda. Thus, the Plaintiff was entitled by right to attend the meeting and speak which he requested. Earlier, some 30 members of the public voiced their reactions and the entire public was cleared of the meeting room and sent to the lobby. Some of the people were thrown out of the meeting. Plaintiff had just arrived and in no way disrupted the meeting. According to an eye witness right after the Police told everyone to leave the lobby area under a "unlawful assembly" order a watch commander present winked and laughed at Plaintiff and Michael Hunt, of which several minutes later were cuffed and arrested for violating P.C. §409[2]

22. So in the lobby the L.A.P.D. said an "unlawful assembly" was declared, despite the Rules clearly allowing Plaintiff to remain in the lobby during a "recess." The Plaintiff was not present prior to this order and had not or could not have caused any alleged "disruption" in the meeting. The Plaintiff demanded the City Attorney or staff from the Commission come out and take the speaker cards and make a ruling. Nothing happened on their part, and Plaintiff and a second person, Michael Hunt, were cuffed and taken away to the basement parking lot of the L.A.P.D. building.

---

[2] "Every person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor." P.C. §409

23. The ordeal lasted 13 ½ hours for Plaintiff—he was whisked away first to the Central Division at skid-row, then back to Metropolitan Division, and had to post A $5,000 bond to get out. The L.A.P.D. set an arraignment date on the charge.

24. The L.A.P.D.'s Rules of Decorum allow the chair without a vote of the members to clear the room. This violated State Law: The Ralph M. Brown Act clearly requires a motion and vote **of the members** to clear the room in a public meeting. Defendant Johnson, an experienced Commissioner and having served beforehand on an earlier City Commission must know the Brown Act within reason, he is also a duly licensed CA. Attorney. Despite this, Johnson cleared the room and ordered everyone who was in attendance out of the meeting room and into the Lobby area.

25. Defendant Johnson immediately reconvened the meeting once two things were done: 1) All the speakers and attendees who were ushered into the Lobby were out of the L.A.P.D. HQ building completely so as to not be able to come back in and 2) Plaintiff and Mr. Hunt were taken away in handcuffs. The meeting room contained Defendants Beck, Soboroff, and Johnson, along with other staff. The audio of the meeting shows that the executive officer, a Richard Tefang advised in an open mic that Plaintiff and Hunt were arrested and the lobby cleared. The response heard by Soboroff and Johnson was in the affirmative. Despite

earlier claiming the meeting was being cleared of the public, when it was reconvened, several members of the public **not media** persons were not only allowed to stay, put allowed to give public comment!  Thus, the public was shut out and the Commission received positive public comments mostly of the witnesses who were allowed to enter and speak. The rest of the public, Plaintiff included, were denied access to speak and attend the meeting. In Plaintiff's case, more than half a day was taken away and other meetings that day that occurred were made impossible to attend by the illegal arrest.

26. The L.A.P.D's Rules of Decorum clearly allowed the Plaintiff to remain in the lobby. The Plaintiff was not in any way disruptive of the earlier meeting or in any way disruptive. Therefore, the Plaintiff could not be legally cited for failure to disperse and could not be in an "unlawful assembly" while waiting to enter a Brown Act meeting in recess! The Penal Code section as-applied to the Plaintiff is unconstitutional and was used in this paradigm to deny the freedom to assemble and speak at a public forum and further City meetings that day.

27.  Defendants Beck, Johnson, and Soboroff knew full well these actions were not in accordance with Law. The meeting was "cleansed" of negative public commentators. As applied, the unlawful assembly statute PC 409 was used to suppress and silence speech and assembly that was critical of the City officials of the L.A.P.D. Police Commission. 4 people who were members of the public

and not journalists, however were **not arrested and cited for P.C. 409: Prentice Jenkins, "Tut" Hayes, Dallas Fowler, and Najee Ali. These 4 people were not only free of arrest and the dispersal order, they were allowed back into the meeting and spoke at public comment. The City of Los Angeles has the video confirming the identity of these 4 people, two of whom participated BEFORE the meeting room was cleared: "Tut" Hayes and Prentice Jenkins.** All these other people were allowed to remain in the building and were not arrested nor asked to leave. Only Plaintiff and one other well known gadfly were arrested. The Defendant City, Soboroff, Beck, and Johnson singled out the Plaintiff as he is well known to the three of them and disliked by them for his use of intensifiers, his criticism of their policies, and the occasional wearing of KKK-style garb which is used to symbolize that the Commission and the Chief are acting Nazi-Like in their treatment of Blacks, Hispanics, and the Poor in redevelopment zones around the City.

Nine people at least were let back in the meeting and all where black except on the video two. No one spoke critically of the new guidelines of Defendant Johnson. Two spoke very highly in support of the L.A.P.D.: Najee Ali and Dallas Fowler. Najee Ali works for Mayor Garcetti and Dallas Fowler was appointed by Garcetti to the L.A.P.D. "Police Permit Review Panel" shortly after this meeting. Thus, the clearing of the room (illegal because it violated the Brown Act despite the facially

invalid Rule VI(d) (Exhibit E.)  and the calling an "unlawful assembly" and arrest of the Plaintiff was as applied done to chill the speech of dissident voices to the new proposals of Defendant Johnson. A picture of the Plaintiff being arrested was found in Januanry 2016 (Exhibit F.) Plaintiff appeared in Court Decembr 4, 2015 and discovered no charges had been filed regarding the November 10, 2015 arrest. Defendants Beck, Johnson, and Soboroff engineered the arrest with retaliatory intent. All three were present the entire time. They were advised by Mr. Teefang, and the City Attorney who were seen in the hall to the back of the Lobby. Johnson and Soboroff on the open mic on the video and audio recording were laughing and very happy to hear Plaintiff and his friend Mr. Hunt were in custody. Beck also could be heard laughing. Right after that the meeting was resumed. Beck, Soboroff, and Johnson thus clearly knew the Plaintiff was in the Lobby and was allowed by law to participate. They directed this illicit activity.

## VI. EVENTS OF NOVEMBER 17, 2015.

28.   While attending the L.A.P.D. Commission meeting and giving public testimony, Defendant Soboroff berated Plaintiff and in violation of the Brown Act demanded he explain why Plaintiff made references to the Nazis. The Plaintiff was speaking about agenda items regarding the L.A.P.D and **referred as before to the Defendant Soboroff being like a Nazi in overseeing a Police Department ran like a Gestappo.** To mock the Jewish commissioner and bring attention to his

overseeing an L.A.P.D. that kills people for no reason and uses unjustifiable force

against mostly black youths, Plaintiff would at times wear a hood with a red

swastika, give a sig heil salute to the Defendants Beck, Soboroff, and Johnson.

Defendant Soboroff blatantly violated the Brown Act by demanding a retraction

of the use of these symbols and references to the Third Reich. Plaintiff had to

verbally spar with Defendant Soboroff and Plaintiff was pressured and put in

fear of his life by the 15 armed police officers standing at all the walls in the;

little meeting room that day. Plaintiff was the only one given this threatening

treatment. Defendant Beck allowed this to occur illegally without action.

## VII. EVENTS OF DECEMBER 8, 2015

29,   Shortly after the L.A.P.D. Commission meeting that day, Defendant

Soboroff blocked the doorway leaving the lobby along with plain clothes L.A.P.D.

personnel and made incendiary and frightening statements in the face of the

Plaintiff. Clearly trying to provoke the Plaintiff into an altercation and to retaliate

for the comments given at the public meeting, Defendant Soboroff exceeded his

authority in doing this and did so in violation of State law. The meeting at that

time had ended. As referenced above, Defendant Soboroff made threats in

direct retaliation for Plaintiffs statements at the Police Commission meeting that

day and earlier. Taking the matter personally, Soboroff used color of law to

retaliate and threaten the Plaintiff. Already having been falsely arrested and

berated, this further escalation of retaliation was done to suppress Plaintiff and stop Plaintiff from going to future meetings. Defendant Beck allowed this to occur while on duty in the police headquarters building in clear violation of his duty as a police officer.

## VIII. EVENTS OF JANUARY 13, 2016

30.  Attending a City Council Homelessness and Poverty Committee meeting, Plaintiff filed a speaker card, but the Chair, Defendant Harris-Dawson would not call Plaintiff to speak, the only person not called to speak as everyone else who handed in a card was allowed time to speak. The Meeting is recorded and identified as "la_1cc21836-907a-4408-ae6e-a76697440120." The agenda was posted (Exhibit B) This blatant violation of the Brown Act was clearly content based discrimination by the Defendant Councilman and the issue was raised at general public comment, but still was not allowed to speak on the Item #1 issue on the agenda. This shows, along with the other incidents above, a clear and focused course of retaliation and suppression against Plaintiff for the content of his speech. The Chair, Defendant Harris-Dawson only called the Plaintiff for 1 minute of "general comments" after the new tax to fund it. Ultimately, the City got the money with a Measure HHH bond put on the ballot. The Committee handling the funds, called the Measure HHH Committee refuses to record its meetings and make written reports on its use of a billion plus dollars voters were basically

tricked into passing being told the money would all go to house homeless people and "stringent" oversight would be needed. All of that failed and was a lie.

30A. There are several other meetings that Plaintiff has been tossed out of for the same fabricated "disruptions" that these Defendants falsely used to do so. The Rules of the City Council aka the "Rules of Decorum" are as applied used to Intimidate, harass, and interfere with the Plaintiff's rights to participate at the meetings. A complaint for damages was submitted and rejected by the City on a pre-suit form the City uses. Harris-Dawson used the Rules supposedly the one that allows the number of speakers to be limited in number if the situation requires it (possible loss of quorum, late start, huge number of speakers, etc.) City Council Rule 11 (allowing limiting number of speakers on an item, and not taking a speaker card that is "illegible.") It is believed and informed by Plaintiff that Harris-Dawson said he didn't call the card because it wasn't "legible.") As applied, Rule 11 is being used by Harris-Dawson to deprive Plaintiff of his right to speak.

## IX. EVENTS OF MARCH 1, 2016

31. The City Council "PLUM" or "Planning and Land Use Management Meeting" was being held. Defendant Harris-Dawson was there along with Defendant Englander.The issue was that the City is destroying affordable housing to increase expensive housing to Defendant Englander attempted to eject Plaintiff

from the meeting and caused the L.A.P.D. Sergeant-at-Arms to also grab the mic out of the hand of the Plaintiff while giving public testimony for no reason.

The Item #1 was called for public comment. The Plaintiff discussed issues that the City was battling a Measure S at the time that would of put a 2 year moratorium on building new housing or longer until all the zoning districts were updated and approved. This would have curtailed developers massive upbuild and destruction of the stock of rent controlled housing.  The only thing that Plaintiff did was speak at the meeting and berate the public Officials for the lousy job they do in land use issues like build expensive housing and tear down affordable rent control housing and use the L.A.P.D. in these "redevelopment zones" to shoot and harass young people and residents to thus pressure them to give up their rent controlled apartments. This meeting was recorded and available from the City website as is all the aforementioned Meetings, identified as "la_34f16707-f344-4a62-865f-25ff19f0f4b3." The Agenda was posted (Exhibit C.) One other speaker, a friend Armando Herman, also criticized Defendant Englander singling him out as a prime example of a cause of such massive out of control building and pushing lower income folks out of housing to do what the developers want: build and give large campaign cash to those who support such. The meeting got hostile at item #2 at 44 minutes into the meeting. Plaintiff pointed out that the Valley Village Neighborhood Council were clearly against the plan to build up. The Chair

lowered the audio on the mike first then the Sergeant at Arms grabbed the mic

trying to pull it out of Plaintiff's hand while Plaintiff still had the floor and time to

speak on the Item #2. Defendant Englander not the chair illegally disrupted the

meeting yelling out to throw Plaintiff out of the meeting. Englander was not

chairing the meeting and could not do that without a vote of the **members of the**

**Committee.** Plaintiffs rights to speak under the Brown Act and the City Rules

were violated, as well as his First Amendment Rights. Plaintiff was also assaulted

and battered by the police officer illegally grabbing the mic and trying to force

Plaintiff away from the podium while Speaking. Defendant Englander illegally

ruled that Plaintiff "disrupted the meeting" and then the Chair illegally kept

interrupting Plaintiff and saying he was "off topic." At all times Plaintiff was

discussing the issue of community opposition to the building expansion, using

intensifiers.

   31A. The objective of these actions is not only to retaliate against Plaintiff who

Attends many public meetings and frequently criticizes the City but to also

get the Plaintiff to speak back at these actions so as to fake a "disruption" so

as to throw out Plaintiff from the meetings. On all the items that were allowed to

speak on, Plaintiff was constantly interrupted and harassed and menaced by the

Defendant Englander and particularly the Chair Councilmember Jose Huizer.

Defendant Englander was running for a County Board of Supervisor seat in the

5th District, long held by Mike Antonovich, who was termed out. Englander was angry that Plaintiff and others were speaking against his election bid and that he was essentially being paid $200,000 a year to run for **another office.** Englander missed almost all his meetings for months on end to campaign and raise over 1 million dollars. He eventually finished 5th place out of 7 candidates, a huge upset. Catherine Barger, Antonovich's head deputy won the seat in a head to head runoff with a relative unknown fellow. The Councilmembers were calling any mention of Defendant Englander's run for the County a "disruption" that it was not "on topic" to mention it. This was clearly illegal and another blatant interpretation of the Rules to silence political dissent to the run Defendant Englander made for the open Supervisor seat. Defendant Englander it must be noted has repeatedly in other meetings he chairs tossed out Plaintiff and prevented him from speaking for no valid reason, while acting under Color of Law. Discovery can show the numerous times Defendant Englander has done this. Englander uses a tactic of ruling that Plaintiff is "off topic" then says next Plaintiff was given one warning and then has Plaintiff removed. Defendant Englander is a serial Brown Act violator, he chairs the City's Public Safety Committee and has thrown out Plaintiff numerous times illegally in violation of the City's Rules and the Brown Act.

///

///

# X. CAUSES OF ACTION

## A. <u>FIRST</u> <u>CLAIM</u> <u>FOR</u> <u>RELIEF</u>
<u>Violations of First Amendment and Due Process Clause of the</u>
<u>U.S. Constitution; and Free Speech and Free Assembly rights</u>
<u>under the First Amendment of the U.S. Constitution and Article</u>
<u>I, §2 of the California Constitution.</u>

<u>Violations of First, Fourth, Fifth, eighth, and Fourteenth</u>
<u>Amendment and Article I, Section 2 of the California</u>
<u>Constitution Regarding Unconstitutional Arrest as applied</u>
<u>Use of Penal Code §409.</u>

32.   By reason of the forgoing, including the illegal arrest and expulsion of Plaintiff from the public meeting of November 10, 2015 , which thereby denied him the right to attend and Defendants Soboroff, Johnson, and Beck  have improperly interpreted and applied Section PC 409 **in an illegal manner to suppress and violate Plaintiff's civil rights.**

33. Plaintiff did not actually disturb or break up the Public Meeting of November 10, 2016. On the contrary, *Cohen v California,* 403. U.S.15(1971) says that politically incorrect speech can be and is guaranteed in a public forum and while assembled in a public place. Consequently, Plaintiff has been impeded in his efforts to carry out constitutionally protected activities as described above, and, accordingly, he has and will suffer damages as a result of Defendants' actions. Absent relief from this Court, Plaintiff will suffer irreparable harm.

Plaintiff's right to freedom of speech and freedom of assembly will continue to be

violated. There is a very real threat of imminent future violations of Plaintiff's

rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendment **and**

Article 1, Section 2 of the California Constitution. Plaintiff was handcuffed,

Detained, physically harmed and emotionally left distraught and deprived of his

civil rights for no legal justifiable reason.  While in Custody, Plaintiff was denied

use of a working phone for hours and hours and denied access for a bail

commissioner hearing that was requested as well as a proper bed and toiletries to

use while being illegally detained in the Metro Jail for 13 ½ hours. Plaintiff was

exposed to dangerous conditions at the Central police station where he was

first held not to book him but to punish him and place him in fear of his life.

Defendant was left in a urine filled cell with other prisoners, one of whom kept

saying he was going to kill someone as soon as possible. This excessive and

illegal detention was done to retaliate against Plaintiff and give Plaintiff the

"grand tour" of the Skid Row jails, as Plaintiff had spoke in defense of Skid

Row residents being harassed by the L.A.P.D. several times.

34.  An actual controversy now exists between Plaintiff and Defendant

concerning his right to express himself and to peaceably assemble at public

meetings of the City including whether Plaintiff will continue to be threatened with

criminal prosecution if his intended activities are deemed by Defendants not be in

compliance with their interpretation of applicable law. Since this incident, the

Defendants have twice arrested the Plaintiff and charged him with 2 additional

crimes, all of which were not prosecuted.

35.  Plaintiff has suffered damages as a direct result of the actions of the

Defendants, including violations of his constitutional rights; denial of the right to

peaceably assemble; denial of his due process rights; denial of the right to speak at

a public meeting on a matter of public concern; the humiliation of being arrested

and forced to leave a public meeting; the requirement to appear in court on

criminal charges; emotional distress and the loss of enjoyment of life, for which

Plaintiff is entitled to compensatory damages as provided by law and subject to

proof at trial.. Plaintiff is informed and believes and upon such information and

belief alleges that by reason of the foregoing, including his willful and intentional

misconduct Defendants acted with reckless or callous disregard, and with

deliberate indifference for Plaintiff's constitutional rights, with an evil motive or

intent to censor Plaintiff and prevent him from exercising his Right to Free Speech,

right of Assembly and Right to Due Process, with malice and oppression, and with

the intention of thereby depriving Plaintiff of his legal and constitutional rights or

otherwise causing injury, for which Defendants owe to Plaintiff for an award of

punitive and exemplary damages, paragraphs 1 through 31 as incorporated  therein.

L.A.P.D. Meeting Rule VI(d) allowing the chair to *sua sponte* recess and clear the

meeting room **without a vote of the members of the Commission** is facially

void and unconstitutional as it violates the Ralph M. Brown Act on its face and

thus is *ultra vires* the rule making of the City. The rule as applied is violative of

Due Process and First Amendment as it allows the arbitrary and discriminatory

removal and interruption by only the Chair of the public in violation of State

Brown Act laws and the CA. Constitution whenever he or she so choses.

   The Defendants Beck , Johnson, and Soboroff also violate Brown Act, Gov't

Code §54954.3 as not allowing criticism of the L.A.P.D Commission and

retaliation for such. Plaintiff before the arrest had attended many public meetings

and was highly critical of the L.A.P.D

## B. SECOND CLAIM FOR RELIEF
**Violations of First, Second, Fourth, Fifth, and Fourteenth Amendments and
Article Section 2 of the California Constitution Regarding Enforcement of
Unconstitutional City's Rules; City's Rules of Decorum. Aka Rule 12 and
L.A.P.D. Rules of the Los Angeles Police Commission and application of them
to Plaintiff (as applied and facial challenges)**

37. The foregoing allegations in Paragraphs 1 through 36 are incorporated

into the Second Claim for Relief as though fully set forth herein The Rules of

Decorum; the City of Los Angeles Rules, and the Los Angeles Police

Departments Rules of Decorum are facially invalid under the CA.

Constitution and Federal Constitution and **as-*applied*** by the Defendants

in their enforcement at Public meetings, their enforcement violate the First Amendment of the Federal and State Constitutions because they contain provisions which constitute impermissible prior restraints on speech. The terms are vague and lack adequate standards or guidelines for enforcement City officials have unbridled discretion to enforce these Rules. Threats complained of herein were directed towards intimidating Plaintiff from the lawful exercise of his constitutional rights. The failure to enact laws and rules that give reasonable notice activities subject to criminal penalties and the failure to adopt precise standards and guidelines by which to guide City officials in applying such laws and rules violates Plaintiff's rights to Due Process under the First, Fifth and Fourteenth Amendments. The incidents on November 10, 2015 (illegal recess and expulsion of public at L.A.P.D. meeting); November 17, 2015, December 8, 2015, January 13, 2016, and March 1, 2016 (illegal use of rules falsely saying speaker "not on topic" or "disrupting the meeting) are all in concert and designed to repeatedly silence and retaliate against Plaintiff. Council Rule 8 as applied to Plaintiff is unconstitutional and being enforced in a discriminatory and arbitrary manner. Defendant Englander and the City use rule 8 as applied to Plaintiff to rule him "off topic." Council Rule 9 is vague and overbroad because the rule **does not prevent the Councilmembers or the Clerk from interrupting Plaintiff during his speaking at public**

**comment at meetings. It is used as applied to Plaintiff by the Defendant City and the named Defendants at public meetings when they interrupt the Plaintiff speaking and then say the Plaintiff is interrupting them from speaking.** This misuse of the Rules is repeatedly shown in the audio recording of the City PLUM meeting of March 1, 2016. Council Rule 12, aka the "Rules of Decorum" as applied to Plaintiff are unconstitutional and violate Plaintiff's right to freely assemble and speak at public meetings.

37A. Rule 12(a) as applied is unconstitutional as it is used by the City to prevent criticism of a particular named Councilmember.  Rule 12(b) on its face is overbroad as it bars "abusive language" and "other disruptive acts" as it has no objective standard and allows the unfettered discretion of the chair to call something said by the member of the public "abusive language." Cursing could be interpreted as "abusive language" or critical intensifiers could be called "abusive language." The term is overbroad and vague. The catch-all "other disruptive acts" also fails to pass Due Process standards. What is "other disruptive acts?" It can mean anything the chair decides it to be other than the list of things mentioned. Walking to the podium slowly could be "other disruptive acts." Giving the finger to the chair the same. Booing while the audience claps has been ordered "disruptive." Booing when clapping is allowed is clearly protected free speech. As applied to the Plaintiff the rule has been used to quash his free speech. Rule

12(d) is vague and overbroad, as it limits the size of "signs, placards, banners, props, or similar items" to 8 ½ by 11 inches but does not limit **hats or costumes worn** to this size restriction. Thus a sign larger than 8 ½ inches by 11 inches **worn as a "hat" or "costume"** is allowed except if it "obstructs the view of other audience members." This term is also vague and overbroad as it does not define how the audience member's view is obstructed: is it when seated or standing? What if the person wearing the hat or costume moves and no longer "obstructs the view of other audience members?" Is the fact it was done one time a ban on that use of such placard or sign? Rule 12(e) as discussed above is overbroad as it does not prevent the Councilmember or Committee Members or the Clerk **from interrupting the Plaintiff**, only the opposite. As applied, this rule has been used to suppress Plaintiff's rights.

38. Consequently, Plaintiff has been impeded in his efforts to carry out constitutionally protected activities as described above, and, accordingly, have and will suffer damages as a result of Defendant's actions and Absent relief from this Court, Plaintiff will suffer irreparable harm. Plaintiff's right to freedom of speech will continue to be violated. There is a very real threat of imminent future violations of Plaintiff's First Amendment and Due Process rights. An actual controversy now exist between Plaintiff and Defendants concerning his right to express himself and to peaceably assemble at public meetings of the City including

whether Plaintiff will be able to continue to be threatened with criminal

prosecution if his intended activities are deemed by Defendants not be compliance

with their interpretation of applicable law.

Plaintiff has suffered damages as a direct result of the actions of the

Defendants, including violations of his constitutional rights; denial of the right to

**peaceably** assemble; denial of the right to speak at a public meeting on a matter of

public concern; the humiliation of being arrested and forced to leave a public

meeting; the requirement to appear in court on criminal charges; emotional

distress and the loss of enjoyment of life, for which Plaintiff is entitled to

compensatory damages as provided by law and subject to proof at trial.

Plaintiff is informed and believes and upon such information and belief

**alleges that** by reason of the foregoing, including his willful and intentional

misconduct, Defendants acted with reckless or callous disregard, and with

deliberate indifference, for Plaintiffs constitutional rights, with an evil motive or

intent to censor Plaintiff and prevent him from exercising his Right to Free Speech,

Right of Assembly and Right to Due Process, with malice and oppression, and with

the intention of thereby depriving Plaintiff of his legal and constitutional rights or

otherwise causing injury, for which Sanders is liable to Plaintiff for an award of

punitive and exemplary damages.

## C. THIRD CLAIM FOR RELIEF

## Fabrications, 28 U.S.C. 1331

39. Failure to intervene in the unlawful detention and arrest by Defendants per

*U.S. v. Koon* 34 F.3d 1416 (9th Cir. 1994.) Defendant police Chief Beck;

Defendant Commissioners Soboroff and Johnson failed to stop and intervene

in the unlawful false imprisonment and arrest of the Plaintiff under P.C. 409. These

Defendants, along with the City allowing such, fabricated an "unlawful assembly"

and illegally Johnson called a "recess" without a vote of the **members** of the

Commission and used these tactics as a ruse to clear the meeting of opposition

speakers to their stated agenda. The duty of the City and Defendants Beck,

Johnson, and Soboroff to stop the illegal arrest and detention of Plaintiff was

violated.

## D. FOURTH CLAIM FOR RELIEF
## BANE ACT CAL. CIV. CODE §52.1

40. City is vicariously liable for its acts of its employees as an employer of the

Defendants Soboroff, Johnson, Beck, Harris-Dawson, and Englander who acted

under color of law to illegally deprive Plaintiff of his right to freely speak and

Assemble and opine at public meetings in violation of the CA. Constitution and

Ralph M. Brown Act. Paragraphs 1 to 39 incorporated by reference. State Law

Civil rights were violated by the as-applied misuse of P.C. §409, the illegal

arrest and detention of Plaintiff, use of excessive force against Plaintiff, and a

constant misuse of the rules of decorum to exclude and prevent Plaintiff from

speaking and assembling peacefully at public meetings of the City. Plaintiff

timely filed presuit claims per state law on these claims.

## E. FIFTH CLAIM FOR RELIEF
## 42 U.S.C. §1983 (MONELL CLAIM.)
### Violations of First. Second, Fourth, Fifth, and Fourteenth Amendments and Article Section 2 of the California Constitution Regarding Enforcement of Unconstitutional Rules of Decorum and application of them to Plaintiff (as applied and facial challenges)

41. The City and the Defendants now acting under color of law have a

longstanding policy by their actions of violating public speakers' right to

participate in their Brown Act sanctioned public meetings as Plaintiff now is the

victim of such longstanding actions of the City. As recently as May 23, 2014 the

City was put  on notice by this Federal Court that they were in violation of the

rights of public speakers and were ordered to pay hundreds of thousands of dollars

in legal fees to attorneys for several violations of the Brown Act (*Dowd v. City of*

*Los Angeles* 09-CV-06731-SS) (Central Dist. L.A. Western Div., Docket #387 and

#388 Page 18 order granting attorney's fees and costs.) The Judge specifically

ordered the large fees (despite the award of only nominal damages to the Plaintiffs)

in part so it would "encourage" the City to refrain from violating the OpenMeeting

laws. Despite this clear message, along with other complaints filed including this

suit, the Defendant City continues to allow the violations to continue without

cessation. The City has a long standing proven track record of violations

of the freedom of speech and assembly in its public meetings. The privileges and

rights to speak and assemble at public meetings has been abrogated by the

Defendants while under color of law. Council Rules 12 (rules of decorum) Rule

8, 9, 12 as applied to the Plaintiff are unconstitutional. As well as the L.A.P.D.

Rules are unconstitutional particulary Rule VI(d). As Applied to Plaintiff, the

L.A.P.D. Rules are unconstitutional.

42.  Plaintiff has suffered emotional injury and humiliation and actual loss of

business provable before a jury under *Johnson v. Hale*  13 F.3d 1351 (9th Cir.

1994); *Tortu v Las Vegas Metro. Police Dep't*  556 F.3d 1075 (9th Cir 2009.)

43. The Los Angeles Police Department has a "code of silence" policy that allows

perjury and the cover-up of police misconduct such as rigging investigations to

clear police within the Department. See Exhibit A as proof of this. The L.A.P.D

assigns sworn officers, called "Sergeants-at-Arms" under the City's Rules whom

Defendant Chief Beck personally picks and assigns to run security **for all public**

**City meetings.** These police officers who witness all the violations in this

complaint, every one of these violations **are under orders to take no action on**

**behalf of the public and forced to comply with any order of the Chair of any**

**Commission or Committee, despite these officers swown oath to "protect and**

**serve THE PUBLIC.** Each of these Sergeants are forced by Beck to operate under a code of silence to protect and cover-up misconduct of the Defendants Harris-Dawson, Englander, Soboroff, and Johnson. This is a longstanding policy and a violation of law.

## F. SIXTH CLAIM FOR RELIEF
## STATE LAW CLAIMS 28 U.S.C. §1367(a)

## FALSE IMPRISONMENT, MALICIOUS INTERFEARANCE WITH BUSINESS RELATIONS, HARASSMENT,RETALIATION, ASSAULT, BATTERY, AND NEGLIGENCE

44. Defendants detained, harassed, retaliated, and discriminated against Plaintiff. Plaintiff at the behest of the Defendants was assaulted and falsely imprisoned on November 10, 2015, and December 8, 2015 (in the Lobby of the L.A.P.D. Headquarters.

45. Plaintiff was Harassed, battered, and maliciously interfered with in his business of law practice on November 10, 2015, November 17, 2015, December 8, 2015 January 13, 2016, and March 1, 2016 by being emotionally placed in harm by the vicious and hateful and intentional violations of the Defendants.

///

///

///

## G. SEVENTH CLAIM FOR RELIEF
## CAL. GOV'T CODE §§815.2, 820, 825 MUNICIPAL LIABILITY FAILURE TO SUPERVISE EMPLOYEES UNDER COLOR OF LAW

46.  The above paragraphs are incorporated by reference. The City as municipal corporate employer does not stop or supervise the violations of open meeting laws of its Councilmembers and Commissioners, in particular the named defendants or of Police Chief Beck. The City has no resolution policy or procedure to supervise such Councilmembers, Commissioners, or its Police Chief. In fact, well after this suit was filed, the L.A.P.D. Commission, headed by Defendants Soboroff and Johnson, along with Chief Charlie Beck. On May 1, 2017 (exh. A) Defendant Beck sent Plaintiff a letter stating **Beck and the L.A.P.D.** found that their actions complained about from Plaintiff back on December 4, 2015 about the P.C. §409 arrest were "protected by law or found to be consistent with Department policy or procedure." **There was no recusal of Chief Beck.** Thus, the City of Los Angeles has no supervision or policies in place to deal with such blatant **conflicts of interest (which is what the letter is---Defendant Beck exonerating the City from HIS SUIT! This** was clearly a conflict of interest and should never had been allowed. But, the City does not supervise nor manage its Chief, Councilmembers, or Commissioners and they are allowed to act in violation of the law **without oversight or controls in place in violation of the Law.**

## H. EIGHTH CLAIM FOR RELIEF
### VIOLATION CAL. GOV'T CODE §54950 et. Seq. Ralph M. Brown Act
### MUNICIPAL LIABILITY FAILURE TO SUPERVISE EMPLOYEES
### UNDER COLOR OF LAW

47. The above paragraphs are incorporated by reference. The Right to speak, submit a speak card and have it called, as well as being interrupted and losing time speaking, being excluded from meetings by arrests and other excuses are violations of the State Law and the City cannot violate State Law it is *ultra vires* its charter to do so. The City has no policy or procedure to cure and correct the violations of the Brown Act by Defendants Harris-Dawson, Englander, Beck, Soboroff and Johnson. The City has no mediation or third party insurance carrier or arbitrator who is not conflicted to intervene, supervise, and regulate these Defendants. The City is strictly liable for these violations and its own policy of allowing lawlessness to be repeated by Commissioners and City Councilmembers. The First Amendment to the CA. Constitution Article I, §2 has been violated by these violations, the Brown Act serves to enforce further these rights guaranteed under the CA. Constitution. **Exhibit A** proves how the City allows the conflict of interest of Defendant Beck to be his own adjudicator of his Departments' violations on November 10, 2015 as well as his sergeant at arms on March 1, 2016, Jauary 13, 2016, December 8, 2015, and November 17, 2015.

# XI. PRAYER FOR RELIEF

48. Therefore, Plaintiff requests judgment against Defendants and each of them, as follows:

A. For a preliminary and permanent injunction enjoining Defendants and Their agents, servants, employees, and successors in office, and all persons acting in concert with them or at their direction or under their control, from enforcing the Law, including the Rules and Penal Code to deny the right to assemble and speak at such meetings.

B. . For a preliminary and permanent injunction enjoining Defendants and their agents, servants, employees, and successors in office, and all persons acting in concert with them or at their direction or under their control, from enforcing the Rules of Decorum of the Los Angeles City Committees and Commissions by Commissioners and Councilpersons solely on the basis of constitutionally protected speech, except where the suspect engages in actual disruption of a meeting of the Commission or Council.

C. For a declaratory judgment that the City's Rules, as interpreted and applied in the case of violating the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U. S. Constitution and Article 1, Section

2 of the California Constitution and the Brown Act.

D  . For an Order directing that the November 10, 2015  citation to Plaintiff for violation of Penal Code Section 409 be expunged *in* any and all files maintained by Defendants.

E. For compensatory damages against Defendants as permitted by law and according to proof at trial, in favor of Plaintiff. Plaintiff suffered humiliation and emotional distress, as well as loss of business as an attorney.

F.  For punitive damages against Defendant City of Los Angeles; as well as Defendants Soboroff, Beck, Englander, Johnson, and Harris-Dawson as permitted by law and according to proof at trial, in favor of Plaintiff.

G. For any further relief as this Court deems just and proper.

## XII. PRAYER FOR JURY TRIAL

49. Plaintiff demands a jury trial on his claims and for punitive damages.

Dated this 31[th]  day of August 2017

Wayne Spindler
*hIn propia persona*

[Spindler v. City of Los Angeles I First Amended Complaint] - 38

**EXHIBIT "A"**

# LOS ANGELES POLICE DEPARTMENT



**CHARLIE BECK**
Chief of Police

**ERIC GARCETTI**
Mayor

P. O. Box 30158
Los Angeles, Calif. 90030
Telephone: (213) 486-0150
TDD: (877) 275-5273
Ref #: 1.0

May 1, 2017

CF No. 15-002955/
CF No. 15-003019/
CF No. 15-003167/
CF No. 15-003306

Mr. Wayne Spindler
19353 Vanowen Street
Reseda, California 91335

Dear Mr. Spindler:

An investigation into your complaint that was reported on December 4, 2015, regarding the conduct of employees of the Los Angeles Police Department, has been completed. The investigation has gone through several levels of review, including myself and the command staff of Internal Affairs Group. Your allegations that employees arrested you without cause and unnecessarily tightened your handcuffs causing injury were classified as *Non-Disciplinary – No Misconduct,* which means that the acts alleged did not rise to the level of misconduct and the named employees' actions were protected by law or found to be consistent with Department policy or procedure.

Thank you for bringing these matters to our attention. It is the goal of the Los Angeles Police Department to provide the highest level of quality service to every member of the community. Should you have any questions concerning these matters, please contact Lieutenant II Dino Caldera, Commanding Officer, Commission Investigation Division, at (213) 996-1230.

Very truly yours,

CHARLIE BECK
Chief of Police

RICHARD M. TEFANK, Executive Director
Board of Police Commissioners

**AN EQUAL EMPLOYMENT OPPORTUNITY EMPLOYER**
www.LAPDonline.org
www.joinLAPD.com

40

Los Angeles Police Department
P.O. Box 30158
Los Angeles, CA  90030
1.0

SANTA CLARITA
CA 913
15 SEP '27
PM 3 L

Mr. Wayne Spindler
19353 Vanowen Street
Reseda, California 91335

91335

41

**EXHIBIT "B"**

CLOSE

HOMELESSNESS AND POVERTY COMMITTEE

Wednesday, January 13, 2016

JOHN FERRARO COUNCIL CHAMBER, CITY HALL - ROOM 340 - 3:00 PM

200 NORTH SPRING STREET, LOS ANGELES, CA 90012

MEMBERS:   COUNCILMEMBER MARQUEECE HARRIS-DAWSON, CO-CHAIR
COUNCILMEMBER JOSE HUIZAR, CO-CHAIR
COUNCILMEMBER MIKE BONIN
COUNCILMEMBER GILBERT CEDILLO
COUNCILMEMBER CURREN D. PRICE JR.

(Eric Villanueva - Legislative Assistant - (213)-978-1075 or email Eric.Villanueva@lacity.org)

Click here for agenda packets

---

Note: For information regarding the Committee and its operations, please contact the Committee Legislative Assistant at the phone number and/or email address listed above. The Legislative Assistant may answer questions and provide materials and notice of matters scheduled before the City Council. Sign Language Interpreters, Communication Access Real-Time Transcription (CART), Assistive Listening Devices, or other auxiliary aids and/or services may be provided upon request. To ensure availability, you are advised to make your request at least 72 hours prior to the meeting/event you wish to attend. Due to difficulties in securing Sign Language Interpreters, five or more business days notice is strongly recommended. For additional information, please contact the Legislative Assistant listed above.

ITEM NO.      (1)
15-1138-S1

City Administrative Officer and Chief Legislative Analyst report relative to the City's Comprehensive Homelessness Strategy.

Fiscal Impact Statement Submitted: Yes.

Community Impact Statement: Yes.

Los Feliz Neighborhood Council
Winnetka Neighborhood Council

COMMENTS FROM THE PUBLIC ON ITEMS OF PUBLIC INTEREST WITHIN THIS COMMITTEES SUBJECT MATTER JURISDICTION

If you challenge this Committee's action(s) in court, you may be limited to raising only those issues you or someone else raised at the public hearing described in this notice, or in written correspondence delivered to the City Clerk at or prior to, the public hearing. Any written correspondence delivered to the City Clerk before the City Council's final action on a matter will become a part of the administrative record.

Materials related to an item on this agenda submitted to the committee after distribution of the agenda packet are available for public inspection in the City Clerk's Office at 200 North Spring Street, Room 395, City Hall, Los Angeles, CA 90012 during normal business hours.

**EXHIBIT "C"**

CLOSE

PLANNING AND LAND USE MANAGEMENT COMMITTEE

Tuesday, March 1, 2016

BOARD OF PUBLIC WORKS EDWARD R. ROYBAL HEARING ROOM 350 - 2:30 PM

200 NORTH SPRING STREET, LOS ANGELES, CA 90012

MEMBERS:   COUNCILMEMBER JOSE HUIZAR, CHAIR
COUNCILMEMBER MARQUEECE HARRIS-DAWSON
COUNCILMEMBER GILBERT A. CEDILLO
COUNCILMEMBER MITCHELL ENGLANDER
COUNCILMEMBER FELIPE FUENTES

(Sharon Dickinson - Legislative Assistant - (213)-978-1074 or email Sharon.Dickinson@lacity.org)

Click here for agenda packets

Note: For information regarding the Committee and its operations, please contact the Committee Legislative Assistant at the phone number and/or email address listed above. The Legislative Assistant may answer questions and provide materials and notice of matters scheduled before the City Council. Sign Language Interpreters, Communication Access Real-Time Transcription (CART), Assistive Listening Devices, or other auxiliary aids and/or services may be provided upon request. To ensure availability, you are advised to make your request at least 72 hours prior to the meeting/event you wish to attend. Due to difficulties in securing Sign Language Interpreters, five or more business days notice is strongly recommended. For additional information, please contact the Legislative Assistant listed above.

ITEM NO.        (1)
14-1325
Motion (O'Farrell - Huizar) and Housing and Community Investment Department and Department of City Planning reports relative to affordable housing policy options.

Community Impact Statement:  None submitted.

ITEM NO.        (2)
14-0057-S3
Motion (Cedillo – O'Farrell) and Housing Committee report relative to amending the Site Plan Review Ordinance to increase the threshold from 50 residential units, and to establish an administrative zoning clearance process for projects below this threshold as a strategy to increase the City's affordable housing production.

Community Impact Statement: Yes
Against: Valley Village Neighborhood Council

**(On February 9, 2016 Council re-referred the matter back to the Planning and Land Use Management Committee, formerly Council file No. 15-1003)**

ITEM NO.        (3)
14-0057-S7
Motion (Cedillo – Wesson) and Housing Committee report relative to the feasibility of expanding the Department's Expedited Processing Section to include the review of projects with new environmental impact reports.

Community Impact Statement: None submitted.

45

(On February 9, 2016 Council re-referred the matter back to the Planning and Land Use Management Committee, formerly Council file No. 15-1251)

ITEM NO.    (4)

Department of City Planning verbal report relative to House LA: Expanding Use of Shared Vehicles (pursuant to Council action of February 9, 2016 on Council file No. 15-1002).

Community Impact Statement: Yes
Against: Valley Village Neighborhood Council

ITEM NO.    (5)

Department of City Planning verbal report relative to House LA: Permitting Micro-unit Housing (pursuant to Council action of February 9, 2016 on Council file No. 15-1004).

Community Impact Statement: Yes
Against: Valley Village Neighborhood Council

ITEM NO.    (6)
16-0158
CD 10       TIME LIMIT 4/25/16; LAST DAY FOR COUNCIL ACTION: 4/22/16
Mitigated Negative Declaration, Mitigation Monitoring Program and related California Environmental Quality Act findings, reports from the Mayor and the Los Angeles City Planning Commission, Resolution to the Wilshire Community Plan to re-designate the land use of the Project Site and add areas from Neighborhood Office Commercial and High Medium Residential to Regional Commercial, and Ordinances to effect a Zone Change on the project site from C2-1 and R3-1 to (T)(Q)R5-1, consistent with the proposed General Plan Amendment, and a Building Line Removal of the existing 15-foot building line located on the eastern side of Harvard Boulevard, for the demolition of existing structures and the construction, use and maintenance of a six-story hotel with 171 guest rooms, 2,800 square feet of ground floor commercial space, and two levels of subterranean parking with 103 automobile parking spaces and 26 bicycle parking spaces, including an incidental sundry store with 24 hour operations daily, ground commercial space is proposed as a restaurant with 70 interior seats and 20 exterior seats with proposed hours of operations from 7:00 a.m. to 1:30 a.m. daily, and exporting 19,000 cubic yards of dirt, for the properties located at 4110 West 3rd Street, 300 and 308 South Harvard Avenue, 4120 West 3rd Street and 301 South Kingsley Drive, subject to Conditions of Approval.

Applicant: 4110 West 3rd Street, LLC,
Representative: Jonathan Lonner, Burns and Bouchard, Incorporated

Case No.: CPC-2015-2030-GPA-ZC-BL-CU-CUB-SPR

Fiscal Impact Statement: Yes

Community Impact Statement: None submitted.

ITEM NO.    (7)
07-1175
Director of Planning oral status report relative to ongoing development of City planning policies, work programs, operations, and other items of interest.

COMMENTS FROM THE PUBLIC ON ITEMS OF PUBLIC INTEREST WITHIN THIS COMMITTEES SUBJECT MATTER JURISDICTION

If you challenge this Committee's action(s) in court, you may be limited to raising only those issues you or someone else raised at the public hearing described in this notice, or in written correspondence delivered to the City Clerk at or prior to, the public

hearing. Any written correspondence delivered to the City Clerk before the City Council's final action on a matter will become a part of the administrative record.

Materials related to an item on this agenda submitted to the committee after distribution of the agenda packet are available for public inspection in the City Clerk's Office at 200 North Spring Street, Room 395, City Hall, Los Angeles, CA 90012 during normal business hours.

47

**EXHIBIT "D"**

# AGENDA



## BOARD OF POLICE COMMISSIONERS

## REGULAR MEETING

## TUESDAY, NOVEMBER 10, 2015
### 9:30 A.M.

### POLICE ADMINISTRATION BUILDING
### POLICE COMMISSION BOARD ROOM
### 100 WEST 1ST STREET
### LOS ANGELES, CA 90012                **www.lapdonline.org**

Commissioners: Matthew M. Johnson, President
Steve Soboroff, Vice President
Sandra Figueroa-Villa
Kathleen Kim
Robert M. Saltzman

Members of the public are invited to address the Board of Police Commissioners on any item on the agenda prior to action by the Board on that specific item.  Members of the public may also address the Board on any matter within the subject matter jurisdiction of the Board.  The Board will entertain such comments during the general Public Comment Period.  Public comment will be limited to two (2) minutes per individual for each item addressed.  Where greater than ten (10) speaker cards are received for a particular item or for general Public Comment, the Presiding Officer may, in the exercise of his or her discretion, reduce the time limit for comment to one minute. Time cannot be ceded to another speaker, and an individual may speak only once during any individual agenda item, and once during general Public Comment.

Members of the public who wish to address the Board on an agendized matter or during general Public Comment are requested to complete and submit a speaker card to a Sergeant-at-Arms, who will deliver it to the Board secretary, for each agenda item on which he or she wishes to speak.  No speaker cards will be accepted once public comment has begun on the specific agenda item for which a card is being submitted or, with respect to general Public Comment, once the general Public Comment period has commenced.  Individuals will be called in the order in which the speaker cards were submitted by the Sergeant-at-Arms to the Board Secretary.  Speaker cards are available at the back of the Board Room.

It is requested that individuals who require the services of a translator contact the Board Secretary no later than the day preceding the meeting.  Whenever possible, a translator will be provided.

Sign language interpreters, assistive listening devices, or other auxiliary aids and/or services may be provided upon request.  To ensure availability, you are advised to make your request at least 72 hours prior to the meeting you wish to attend.

SI REQUIERE SERVICIOS DE TRADUCCION, FAVOR DE NOTIFICAR LA OFICINA CON 24 HORAS POR ANTICIPADO.

**NOTE:  The meeting is tape-recorded and the tape is kept for 30 days**

1.   **COMMISSION COMMENTS**

Relative to attendance/participation at meetings, ceremonial events, brief reports identifying involvement in Commission-related projects, and request for future agenda items/reports.

2.   **REPORT OF THE CHIEF OF POLICE**

- Significant Incidents and activities occurring during the period of November 3, 2015 through November 10, 2015
- Crime Statistics
- Recruitment/Reinstatement/Reassignment of Officers
- Department Personnel Strength

3.   **CONSENT AGENDA ITEMS**

The Consent Agenda items are considered to be routine and non-controversial upon which documentation provided to the Board is adequate to give sufficient information for approval without inquiry or discussion. It is designated to minimize the time required for the handling of routine matters in order to permit additional time to be spent on more significant matters. The President will call for ayes and nays on the Consent Agenda as a whole and the vote will be treated as a separate vote on each item. These items may be moved to the Regular Agenda at the order of the President or at the request of the other members of the Board or if a member of the general public has submitted a request to speak on the subject.

None

4.   **REGULAR AGENDA ITEMS**

A.   VERBAL PRESENTATION by the Board President, discussion and possible Board action relative to proposed Board Initiatives for the Office of the Inspector General and Deparment related to Use of Force, Training and Audits.

5.   **PUBLIC COMMENT PERIOD**

6.   **CLOSED SESSION ITEMS**

A.   PUBLIC EMPLOYEE DISCIPLINE/DISMISSAL/RELEASE/PUBLIC EMPLOYEE PERFORMANCE EVALUATION. Officer Involved Shooting (OIS), and Unintentional Discharge (UD). Government Code Section 54957.

1.   Animal-OIS #009-15                    One Police Officer II

2.   UD #077-14                           Two Police Officer II

B.   PUBLIC EMPLOYEE DISCIPLINE/DISMISSAL/RELEASE/PUBLIC EMPLOYEE PERFORMANCE EVALUATION. Discussion and possible Board action on annual evaluation. Government Code Section 54957.

1.   Chief of Police



*The Board will reconvene in Open Session to announce its decisions, if any, regarding matters considered in Closed Session.*

**ADJOURNMENT**

Support materials relative to Open Session agenda items are available for public inspection in Room 134, Police Administration Building.  The Board may consider matters of an emergency nature not appearing on the published agenda.  Information on supplemental agenda items may be obtained by calling the Office of the Board Secretary, Police Commission, at (213) 236-1400 (TDD 213/236-1440), after 9:30 a.m., Friday, November 6, 2015.

As a covered entity under Title II of the Americans with Disabilities Act, the City of Los Angeles does not discriminate on the basis of disability and, upon request, will provide reasonable accommodation to ensure equal access to its programs, services, and activities.

51

**EXHIBIT "E"**

# RULES OF THE

# LOS ANGELES BOARD OF POLICE COMMISSIONERS



# SEPTEMBER 15, 2015

53

## LOS ANGELES POLICE COMMISSION

### Rules for Public Attendance and Participation at Meetings of the Board of Police Commissioners

#### I.  Purpose

The purpose of these rules is to establish an appropriate level of safety and efficiency in the meeting room of the Board of Police Commissioners ("Board") for Police Department stakeholders and other members of the public attending and/or addressing the Board.  The ability of all interested persons attending public meetings to safely and efficiently participate in the business of the Commission and to observe the Board members in the performance of their duties is of paramount importance to the Board.  The Board also has a compelling interest in the efficient transaction of business, free from actual disruption.  Toward that end, the following rules have been promulgated to facilitate the conduct of public meetings in an open, orderly and efficient manner and in an environment safe for all persons in attendance.

#### II.  Access to the Police Headquarters Facility (PHF)

Visitors to the PHF must first check in at the front desk on the first floor.  All visitors attending a meeting of the Board of Police Commissioners shall pass through the security screening (i.e., magnetometer, bag search), and obtain a visitor's pass which must be worn on the front of the torso and must be visible at all times while in the building.

All visitors to the PHF are required to remain in Public Areas at all times.  Public Areas are: 1) the ground floor lobby; and 2) the Board room and adjacent entry corridor and lobby area restrooms.  Visitors are not allowed in secured areas such as the elevator lobby, staff office areas, conference rooms and other work areas, unless accompanied at all times by a Police Department/Commission employee and for a specific invited business purpose.

#### III. Access to the Board Room

Visitors to the PHF who desire to attend meetings of the Board shall not be required to register their names or otherwise provide any other information to enter into the Board room.  Non-badged public meeting attendees must, however, display a visitor's pass.  Where a public meeting attendee wishes to maintain his or her anonymity, he or she will not be required to write his or her name on the visitor's pass and such pass may remain blank, except for the designation "Police Commission."

Public meeting attendees shall be required to leave the PHF immediately following the adjournment of the public meeting and must exit the building from the ground floor lobby.

#### A.  Capacity of the Board Room

Each member of the audience must be seated.  Standees are not permitted in the Board room except for Police Department/Commission Sergeants-at-arms or authorized media representatives in possession of a Department-issued Press Pass.

54

Rules for Public Attenda...e and Participation at Meetings
   of the Board of Police Commissioners
Page 2
1.0

Whenever the President anticipates that the number of persons attending a Board meeting may exceed the legal capacity of the Board Room, an alternate room within the PHF (overflow room), equipped with live audio of the meeting will be opened to the public, when available. Opportunities to address the Board will be made equally available to members of the public from both rooms, and the Rules set forth herein shall apply in both rooms.

### B.  Special Accommodations

The Police Commission is committed to ensuring equal access to its meetings.  It is requested that individuals who require the services of a translator contact the Board Secretary no later than the day preceding the meeting.  Whenever possible, a translator will be provided.

Sign language interpreters, assistive listening devices, or other auxiliary aids and/or services may be provided upon request.  To ensure availability, you are advised to make your request at least 72 hours prior to the meeting you wish to attend.

## IV. Speaking Before the Board

While the Board invites public participation in the business of the Commission, meetings of the Board are not traditional public forums where speakers have a right to speak freely on any topic of interest to the speaker.  Meetings of the Board are regulated limited public forums and are strictly limited to topics directly concerning the subject matter or business of the Police Commission generally, or the individual agenda topics noticed for review.

### A.  Scope of Public Comment

Members of the public may address the Board orally at Board meetings on either: 1) specific agendized matters of business, or 2) at the general Public Comment portion of the meeting.  Public comment on an agendized item shall be taken prior to the Board taking action on such matter.  Speakers on agendized matters shall limit their comments to the specific agendized matter of business.

Time will be allotted at every meeting for general Public Comment.  During general Public Comment, members of the public may speak on matters within the subject matter jurisdiction of the Board.  Speakers shall limit their comments to matters relating to the business of the Police Commission.

Members of the public who have submitted speaker cards for either an agendized item or general Public Comment shall address the Board from the podium.

### B.  Speaker Cards

A person wishing to address the Board on an agendized matter or during general Public Comment is requested to complete and submit a speaker card to a Sergeant-at-Arms, who will deliver it to the Board secretary, for each agenda item on which he or she wishes to speak.  No speaker cards will be accepted once public comment has begun on the specific agenda item for which a card is being submitted or, with respect to general Public Comment, once the general

55

Rules for Public Attendance and Participation at Meetings
of the Board of Police Commissioners
Page 3
1.0

Public Comment period has commenced. Individuals will be called in the order in which the speaker cards were submitted by the Sergeant-at-Arms to the Board secretary.

C.  Time Limits

Each person timely submitting a Speaker card shall be permitted to speak for a maximum of two (2) minutes on each item for which a card has been submitted. Where greater than ten (10) speaker cards are received for a particular item or for general Public Comment, the Presiding Officer may, in the exercise of his or her discretion, reduce the time limit for comment to one minute. Time cannot be ceded to another speaker, and an individual may speak only once during any individual agenda item, and once during general Public Comment.

**V. Decorum**

A.  Persons Addressing the Board

Each person who addresses the Board shall do so only from the podium and shall refrain from speaking beyond the allotted time or making remarks which are not relevant to the specific agenda item for which public comment is being given.

Speakers shall direct all remarks to the Board as a whole.

B.  Members of the Audience

No person in the audience at a Board meeting shall engage in any acts which cause an actual disruption of the meeting by preventing or impeding the Board's ability to accomplish its business in a reasonably efficient manner.

Signs, posters, banners or other display material which disrupt or otherwise impede the orderly conduct of the meeting or which create any obstruction to another person's attendance at or participation in the meeting are prohibited.

Members of the public or press attending a meeting of the Board may record and/or photograph the proceedings, unless such activities or the manner in which they are carried out cause a disruption of the meeting.

**VI. Enforcement**

The Presiding Officer shall be charged with enforcing the provisions of these Rules, with the assistance of Board staff, the Sergeants-at-Arms, and other necessary Police Department personnel.

A.  Presiding Officer

The Presiding Officer at meetings of the Board shall be the President of the Board, or his/her designee. The Presiding Officer is charged with maintaining order during meetings and enforcing the provisions of these Rules including, but not limited to violations of:

Rules for Public Attendance and Participation at Meetings
  of the Board of Police Commissioners
Page 4
1.0

- The limitations on the scope of public comment set forth in Rule IV.A, above;
- The limitations on speaker time set forth in Rule IV.C, above; and
- The decorum requirements set forth in Rule V, above.

B.  <u>Warnings</u>

The Presiding Officer shall request that a person who is breaching the Rules cease and desist from such conduct.  In such a case, the Presiding Officer shall advise said individual(s) that a failure to cease and desist may lead to the termination of his or her remaining Public Comment time.

C.  <u>Removal For Actual Disruption</u>

If, after being warned by the Presiding Officer, the individual(s) persist in causing an actual disruption of the meeting, the Presiding Officer may order the individual(s) to leave the meeting.  If the individual(s) do not remove themselves, the Presiding Officer may order any law enforcement officer to facilitate the removal of the noncompliant individual(s) from the Board room.

Any person so removed shall be excluded from further attendance at the meeting from which he or she was removed.

Any person who <u>resists</u> removal from the Board room (or other area where a meeting is held) by a law enforcement officer may be subject to arrest for violation of the Penal Code or other applicable Los Angeles Municipal Code sections.

D.  <u>Recess Due to Inability to Restore Order</u>

In the event that a meeting is willfully interrupted by a group or groups of persons so as to render the orderly conduct of the meeting infeasible and order cannot be restored by the removal of individuals who are willfully interrupting the meeting, the Presiding Officer may call for a recess, order the meeting room cleared and subsequently reconvene the meeting.  Where the Board elects to proceed in this manner, only agendized items shall be considered, and representatives of the press or other news media not previously engaged in the disturbance shall be allowed to remain present and attend such session.

Adopted by a majority vote of the Board of Police Commissioners at a regular Commission meeting on _September 15_, 2015.

**BOARD OF**
**POLICE COMMISSIONERS**
Approved *September 15, 20*
Secretary *Maria Silva*

**EXHIBIT "F"**



Checks

http://www.trbimg.com/img-5642578e/turbine/la-me-ln-police-commission-president-goals-201-001/600/6...  1/1/2016

# CITY OF LOS ANGELES SPEAKER CARD

**NOTE: THIS IS A PUBLIC DOCUMENT SUBJECT TO POSTING ON THE CITY'S WEBSITE. YOU ARE NOT REQUIRED TO PROVIDE PERSONAL INFORMATION IN ORDER TO SPEAK, EXCEPT TO THE EXTENT NECESSARY FOR THE PRESIDING OFFICER TO CALL UPON YOU**

Date 11.10 15

**THE CITY COUNCIL'S RULES OF DECORUM WILL BE ENFORCED.**

Council File No., Agenda Item, or Case No.

wish to speak before the ____Special Housing LAPD____
Name of City Agency, Department, Committee or Council

Do you wish to provide general public comment, or to speak for or against a proposal on the agenda?
( ) For proposal
(X) Against proposal
( ) General comments

Name: Wayne Houseman

Business or Organization Affiliation: ____

Address: ____ Street ____ City ____ State ____ Zip

Business phone: ____ Representing: ____

**CHECK HERE IF YOU ARE A PAID SPEAKER AND PROVIDE CLIENT INFORMATION BELOW:** ☐

Phone #: ____

Client Name: ____

Client Address: ____ Street ____ City ____ State ____ Zip

<u>Please see reverse of card for important information and submit this entire card to the presiding officer or chairperson.</u>

Exhibit K

60

## CITY OF LOS ANGELES SPEAKER CARD

**NOTE: THIS IS A PUBLIC DOCUMENT SUBJECT TO POSTING ON THE CITY'S WEBSITE.**
YOU ARE NOT REQUIRED TO PROVIDE PERSONAL INFORMATION IN ORDER TO SPEAK,
EXCEPT TO THE EXTENT NECESSARY FOR THE PRESIDING OFFICER TO CALL UPON YOU

Date 11.10.15

**THE CITY COUNCIL'S RULES OF DECORUM WILL BE ENFORCED.**

Council File No., Agenda Item, or Case No. 5

wish to speak before the ~~Read Budget~~ LADWP
Name of City Agency, Department, Committee or Council

o you wish to provide general public comment, or to speak for or against a proposal on the agenda? ( ) For proposal
( ) Against proposal
( ) General comments

ame: Wayne Houseman

usiness or Organization Affiliation: _____

ddress: _____
Street — City — State — Zip

usiness phone: _____ Representing: _____

**HECK HERE IF YOU ARE A PAID SPEAKER AND PROVIDE CLIENT INFORMATION BELOW:**

lient Name: _____ Phone #: _____

lient Address: _____
Street — City — State — Zip

Please see reverse of card for important information and submit this entire card to the presiding officer or chairperson.

---

## CITY OF LOS ANGELES SPEAKER CARD

**NOTE: THIS IS A PUBLIC DOCUMENT SUBJECT TO POSTING ON THE CITY'S WEBSITE.**
YOU ARE NOT REQUIRED TO PROVIDE PERSONAL INFORMATION IN ORDER TO SPEAK,
EXCEPT TO THE EXTENT NECESSARY FOR THE PRESIDING OFFICER TO CALL UPON YOU

Date 11.10.15

**THE CITY COUNCIL'S RULES OF DECORUM WILL BE ENFORCED.**

Council File No., Agenda Item, or Case No. 6A

wish to speak before the ~~Special Housing~~ LAPD
Name of City Agency, Department, Committee or Council

o you wish to provide general public comment, or to speak for or against a proposal on the agenda? ( ) For proposal
( ) Against proposal
( ) General comments

ame: Wayne Houseman

usiness or Organization Affiliation: _____

ddress: _____
Street — City — State — Zip

usiness phone: _____ Representing: _____

**HECK HERE IF YOU ARE A PAID SPEAKER AND PROVIDE CLIENT INFORMATION BELOW:**

lient Name: _____ Phone #: _____

lient Address: _____
Street — City — State — Zip

61